UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MURAD KHAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>A&H SECURITY SERVICES, LLC,<br><br>Defendant. | No. 1:24-cv-3491<br><br>**COMPLAINT FOR VIOLATION OF FAIR LABOR STANDARDS ACT AND NEW YORK LABOR LAW**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Murad Khan ("Plaintiff"), by his undersigned counsel, alleges the following which is based on personal knowledge and the investigation of counsel:

## NATURE OF THE ACTION

1. This is a collective action against defendant A&H Security Services, LLC ("A&H" or "Defendant") for failure to pay overtime in violation of the Fair Labor Standards Act, a class action for failure to pay overtime in violation of the New York Labor Law ("NYLL") and failure to provide compliant wage notifications and statements in violation of the NYLL, and an individual action for retaliation because Plaintiff's employment was terminated immediately after he complained of Defenant's failure to pay overtime.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. §1331 and the FLSA, 29 U.S.C. §216. This Court has jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this District because Defendant resides herein.

## THE PARTIES

4. Plaintiff Murad Khan was employed by Defendant as a fire and security guard from March 17, 2024 through March 30, 2024.

5. Defendant A&H describes itself as "a locally owned and operated Security firm [with] over 25+ current clients and over 1,100 guards[.] A&H Security is quickly becoming NYC['s] go to security firm for hotels, asylums, shelters, medical facilities, construction sites, and residential buildings." Defendant's office is located in the Bronx.

## CLASS ACTION ALLEGATIONS

6. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the following class of security guards who were untimely paid (the "Class"):

All persons employed by A&H as security guards in the State of New York from April May 6, 2018, through the date a judgment is entered.

7. Members of the Class are so numerous that joinder of all members would be impracticable. Defendant states on LinkedIn that it employs 1,100 security guards.

8. Questions of law and fact are common to all the members of the Class that predominate over any questions affecting only individual members. The following uniform questions, among others, apply to the Class:

- Whether Plaintiff and the Class were paid for all hours worked including overtime;
- Whether Plaintiff and the Class received deficient initial pay notifications in violation of NYLL §195(1);
- Whether Plaintiff and the Class received deficient weekly pay statements in violation of NYLL §195(3);
- The amount by which Plaintiff and the Class have been damaged; and

2

- whether Plaintiff and the Class are entitled to liquidated damages.

9. The claims of Plaintiff are typical of the claims of the members of the Class. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

10. Plaintiff will protect the interests of the Class fairly and adequately, and Plaintiff has retained attorneys experienced in class action litigation.

11. A class action is superior to all other available methods for this controversy because:

a. The prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

b. The prosecution of separate actions by the members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for defendant;

c. Defendant acted or refused to act on grounds generally applicable to the Class; and questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

d. Employees who are currently employed by Defendant are likely to fear retaliation and/or the loss of their employment, and thus will not commence their own actions.

## SUBSTANTIVE ALLEGATIONS

12. Plaintiff and the Class are fire and security guards currently and formerly employed by Defendant.

13. Plaintiff was initially hired to work for Defendant as a fire and security guard at a shelter, at a regular hourly pay rate of $17 per hour. Before beginning his assignment at a shelter, Plaintiff was assigned to work for Defendant at an early-voting polling location for the NYC Board of Elections ("BOE") on Staten Island for the March 23-30 early voting period. Plaintiff was paid a regular hourly rate of $24 per hour at the BOE location but was not paid time and one half his hourly rate for hours worked over 40 as required by the FLSA and the NYLL. Instead, Plaintiff was paid an overtime rate of $25 per hour.

14. Plaintiff was provided with an initial pay notification that was deficient and in violation of NYLL §195(1) because, among other things, it was not signed and dated by Plaintiff, did not state Plaintiff's pay day, and did not accurately state the overtime rate at which Plaintiff was paid. Plaintiff received a pay statement from Defendant that violated NYLL §195(3) because it did not accurately state the number of overtime hours Plaintiff worked. Plaintiff worked approximately 125 hours but his pay statement showed that he was only paid for 104 hours. For the overtime hours in which Defendant actually paid Plaintiff, he was paid at an overtime rate of $25 rather than the $36 overtime rate that was listed on his (deficient) initial pay notification.

15. Each day that Plaintiff worked at the BOE site, he stayed in a hotel room rented by Defendant and was required to sleep in a small room with two other security guards working for Defendant. Each morning, Plaintiff was taken, along with six other security guards, by a vehicle chartered by Defendant and driven by a manager to the BOE location.

16. Upon arriving at the hotel, the manager/driver, whose name was Ushe, would bang on the door and usher Plaintiff to the vehicle. Plaintiff would then be required to sit in the car as Ushe drove the other security guards to their work locations. Plaintiff was then dropped off at his location approximately 90 minutes early. Thus, for a shift that started at 4 pm, Plaintiff was dropped off around 2:30 pm. Defendant required Plaintiff to be at the location early. Thus, Plaintiff was engaged to wait.

17. Plaintiff worked at an early-voting location. The ballots and voting machines remained at the location for the entire week. Plaintiff's job was to guard the ballots and voting machines overnight. Plaintiff worked at the facility overnight and did not sleep. Plaintiff's shift ended at 10 am. However, Plaintiff was then required to sit in the car with Ushe as he dropped off all of the other security guards, and eventually dropped off Plaintiff as well. Plaintiff would then sleep for a few hours before Ushe would come knocking at his door again between 1:00 and 1:30 p.m. and the work day started all over again.

18. Plaintiff estimates that at least 25 other security guards worked on similar assignments on Staten Island at the time and potentially hundreds of security guards performed similar work throughout New York City during early voting week.

19. Plaintiff was underpaid in multiple respects. First, Plaintiff worked at least 125 hours in the week he was employed—including the mandated time in the car with Ushe which was solely for Defendant's benefit and was therefore compensable work—yet he was paid for only 104 hours. Second, Plaintiff was not paid at an overtime rate of $36 per hour as required for the FLSA and the NYLL; rather, he was paid $25 for hours worked over 40.

20. When Plaintiff and the other security guards received their paychecks, each of them was angered by the underpayments. Each of the 25 security guards confirmed that they were severely underpaid and many stated that they were "cheated."

21. For the overtime hours Plaintiff was paid for, he was not paid at the $36 hourly rate but rather was paid at a rate of $25 per hour. Given that Plaintiff's regular rate of pay was $24 per hour, and his overtime rate of pay was $36, Plaintiff was underpaid by $9 per hour for approximately 85 hours, for a total of $765 plus liquidated damages and interest.

22. The following week, after the BOE assignment, Plaintiff was initially given assignments for two days at the shelter where he was hired to work.

23. However, on April 4, 2024, Plaintiff complained to Defendant's payroll manager that he had not been paid the overtime he was owed for the BOE assignment. Thereafter, all of Plaintiff's supervisors told him that they did not have any available shifts for him. Plaintiff was never contacted or given another assignment. This was plainly retaliation. Defendant is constantly hiring new employees and had work but denied Plaintiff any opportunities because of retaliatory animus due to his complaint of not being paid overtime.

**C. Defendant's Non-Compliant Pay Statements**

24. NYLL §195(1) requires an employer to provide employees, at the time of hiring, a statement that is among other things signed and dated by the employee, states the Plaintiff's pay day, and states the overtime rate at which an hourly employee will be paid.

25. Plaintiff received a statement from Defendant that did not satisfy any of the above requirements. Accordingly, the initial pay statement provided to Plaintiff violated NYLL §195(1).

26. New York Labor Law §195(3) requires an employer to "furnish each [non-exempt] employee with a statement with every payment of wages" that sets out "the number of overtime hours worked" among other things.

27. Defendant's pay statements failed to accurately state the number of overtime hours Plaintiff worked. Accordingly, Defendant's pay statements failed to comply with NYLL §195(3).

28. Defendant's disclosure failures in violation of NYLL §195(1) and (3) have deprived Plaintiff and the Class of the ability to know exactly how much compensation they were entitled to and led to the underpayment of wages as alleged herein. Defendant's inclusion of a $36 per hour overtime rate—the amount required by law—deceived Plaintiff and the Class into working for Defendant, after which Plaintiff and the Class to then be paid at $25 overtime rate in violation of applicable law. Defendant's failure to include an accurate overtime hourly rate on the initial pay notifications of Plaintiff and the Class, and failure to include the number of overtime hours worked by Plaintiff and the Class on their weekly pay statements, deprived the Class of the ability to know how much compensation they were entitled to or would actually receive, thus resulting in the underpayment of wages. As a result of the underpayment of wages, which was caused in whole or in part by Defendant's violations of NYLL §195(1) and (3), Plaintiff and the Class have lost the time value of the money they are owed and Defendant has retained those funds, used them to run its business, and profited therefrom.

## **COUNT I**

**Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*: Failure to Pay Overtime**
**(Brought on Behalf of Plaintiff and the Collective)**

29. Plaintiff incorporates and realleges all of the preceding paragraphs as if they were fully set forth herein.

30. During the FLSA Class Period, Plaintiff and others similarly situated were "employees" of Defendant within the meaning of the FLSA, 29 U.S.C. §203(e) and (g).

31. At all relevant times, Defendant has been an "employer" engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. §203.

32. At all relevant times, Defendant's business has had annual gross revenues in excess of $500,000.

33. Plaintiff consents in writing to be a party to this action pursuant to 29 U.S.C. §216(b). Plaintiff's written consent is attached hereto as Exhibit A and incorporated by reference.

34. Defendant was required to properly pay Plaintiff and others similarly situated all wages due including applicable overtime wages for all hours worked in excess of 40 hours in a workweek.

35. During the FLSA Class Period, Defendant failed to pay Plaintiff and the Class all wages due including overtime wages of not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek to which they were entitled under the FSLA, 29 U.S.C. §207.

36. Defendant's violation of the overtime requirements of the FLSA was part of its regular business practice and constituted a pattern, practice, and/or policy.

37. As a result of Defendant's violations of the FLSA, Plaintiff and others similarly situated have suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages in an amount equal to their unpaid wages, prejudgment and post judgment interest, reasonable attorneys' fees, and costs and expenses.

38. Defendant's unlawful conduct, as described above, was willful and intentional and/or was not in good faith. Defendant knew or should have known that the practices complained of herein were unlawful. Defendant knew that Plaintiff and others similarly situated routinely worked in excess of forty hours per week and that Plaintiff and others similarly situated were not paid for all hours worked. Defendant knew that failing to pay overtime is unlawful and violates the FLSA. Defendant's inclusion of the proper overtime rate on Plaintiff's initial pay notification shows that Defendant was fully aware of the requirements of applicable law, and Defendant's refusal to pay Plaintiff the proper overtime rate even after he complained of the underpayment shows that Defendant intentionally violated the FLSA's overtime requirements.

39. Defendant has not made a good faith effort to comply with the FSLA with respect to the compensation of Plaintiff and others similarly situated.

40. Because Defendant's violations of the FSLA have been willful, a three-year statute of limitations applies, pursuant to the FLSA, 29 U.S.C. §255(a).

41. Due to Defendant's violations of the FLSA, Plaintiff and the Class are entitled to recover from Defendant their unpaid wages, liquidated damages, reasonable attorneys' fees, costs and expenses, and pre-judgment and post-judgment interest.

## COUNT II

**New York Labor Law, Article 6 and 19: Failure to Pay Straight Time and Overtime**
**(Brought on Behalf of Plaintiff and the NYLL Class)**

42. Plaintiff incorporates and realleges all of the preceding paragraphs as if they were fully set forth herein.

43. Plaintiff and the Class were employees of Defendant within the meaning of the NYLL, Article 6, §190(2), and supporting New York regulations.

44. Defendant was an "employer" within the meaning of NYLL Article 6, §190(3),

and any supporting regulations.

45. Defendant failed to pay Plaintiff and the Class for all hours worked up to 40 in a workweek, and overtime wages of not less than one and one-half times their regular rate of pay for each hour worked in excess of 40 hours in a workweek.

46. Defendant's failure to pay Plaintiff and the Class for all hours worked, and for overtime wages was willful and/or not in good faith within the meaning of NYLL, Article 19, §663. Defendant was aware of the requirements of the NYLL and continued to deprive Plaintiff and the Class of all wages owed.

47. Due to Defendant's violations of the NYLL, Plaintiff and the Class are entitled to recover from Defendant their unpaid wages, liquidated damages, reasonable attorneys' fees, costs and expenses, and pre-judgment and post-judgment interest.

## **COUNT III**

**New York Labor Law, Section 195(1): Initial Pay Notification**

48. Plaintiff incorporates and realleges all of the preceding paragraphs as if they were fully set forth herein.

49. New York Labor Law §195(1) requires that the employer provide a statement with each payment to an employee setting out, among other things, the employee's overtime rate. The notice must also be signed by the employee.

50. Defendant's pay stubs did not comply with NYLL §195(3) because they did not contain the above information.

51. As a result of Defendant's violation of NYLL §195(3), Plaintiff and the Class are entitled to $5,000 in statutory damages, plus reasonable attorneys' fees, costs and expenses.

## COUNT IV

**New York Labor Law Section 195(3): Weekly Pay Statements**

52. Plaintiff incorporates and realleges all of the preceding paragraphs as if they were fully set forth herein.

53. New York Labor Law §195(3) requires that the employer provide a statement with each payment to an employee setting out, among other things, the number of overtime hours worked by the employee.

54. Defendant failed to provide Plaintiff with this information in its weekly pay statements.

55. As a result of Defendant's violation of NYLL §195(3), Plaintiff and the Class are entitled to $5,000 in statutory damages, plus reasonable attorneys' fees, costs and expenses.

## COUNT V
**FLSA §215: Retaliation**

56. Plaintiff incorporates and realleges all of the preceding paragraphs as if they were fully set forth herein.

57. Plaintiff was an employee of Defendant within the meaning of the FLSA.

58. Plaintiff complained to Defendant that he was not paid for all hours worked and/or all overtime hours worked, in violation of the minimum wage and overtime provisions of the FLSA.

59. Defendant terminated Plaintiff's employment immediately thereafter and for the sole reason being that Plaintiff complained of Defendant's violation of law.

60. Accordingly, Plaintiff is entitled to actual damages and/or statutory damages.

## COUNT VI
## NYLL §215: Retaliation

61. Plaintiff incorporates and realleges all of the preceding paragraphs as if they were fully set forth herein.

62. Plaintiff was an employee of Defendant within the meaning of the NYLL.

63. Plaintiff complained to Defendant that he was not paid for all hours worked and/or all overtime hours worked, in violation of Articles 6 and 19 of the NYLL.

64. Defendant terminated Plaintiff's employment immediately thereafter and for the sole reason being that Plaintiff complained of Defendant's violation of law.

65. Accordingly, Plaintiff is entitled to actual damages and/or statutory damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant Plaintiff and the Class the following relief:

A. An order certifying this action as a collective action for violations of the FLSA, pursuant to 29 U.S.C. §216(b);

B. An order certifying this case as a class action for violations of the NYLL under Federal Rule of Civil Procedure 23 (a) and (b)(3) for the class of employees described herein, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

C. Award Plaintiff and the Class all statutory damages, compensatory damages, punitive damages, liquidated damages, pre-judgment interest, and post-judgment interest, and any other damages that may be just and proper;

D. Award Plaintiff and the Class their reasonable attorneys' fees, costs and expenses as authorized by law; and

E. Grant in favor of Plaintiff and the Class such other relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims for which a jury is available.

DATED: May 6, 2024 **GARDY & NOTIS, LLP**

By: *s/Orin Kurtz, Esq.*
Orin Kurtz
150 East 52nd Street, 11th Floor
New York, New York 10022
Tel: (212) 905-0509
Fax: (212) 905-0508
okurtz@gardylaw.com


Daniel H. Kovel
Kovel Law PLLC
14 East 96th Street, Suite 3
New York, NY 10128
Tel: (646) 397-1729

*Attorneys for Plaintiff*